(Supreme Court, Appellate Division, Second Department.  November 22, 1907.)

MUNICIPAL CORPORATIONS—OPEN MANHOLES IN STREET—ACTION FOR INJURIES.
—EVIDENCE—CONTRIBUTORY NEGLIGENCE.

In action for injuries to a pedestrian by falling into a manhole in the
street, held, that plaintiff was negligent and could not recover.

.[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corpora-
tions, §§ 1739–1743.]

Appeal from Trial Term, Kings County.

Action by Anna M. Wrigley against the city of New York and an-
other.  From a judgment for plaintiff, and refusal to grant a new
trial, defendants appeal.  Reversed, and new trial granted.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MIL-
LER, JJ.

James D. Bell, for appellant city of New York.

Frank V. Johnson (Knowlton Durham, on the brief), for appel-
lant Eastern Bermudez Asphalt Paving Company.

James S. Lawson, for respondent.

RICH, J.  This action is for damages alleged to have been sus-
tained in consequence of plaintiff falling into an open manhole in
Greene avenue, in the borough of Brooklyn; the accident occur-
ring under the following circumstances:  An asphalt pavement was
being laid in said street by the defendant company under a contract
with the defendant city.  Greene avenue runs east from Bushwick
avenue.  On the east side of the latter avenue the distance from the
curb line to the fence line is 18 feet, in the middle of which space
there is a flag walk 6 feet in width.  The balance of the space on
each side is dirt.  There were two manholes in Greene avenue just
east of Bushwick avenue—one 5 feet 8 inches from the curb line
of Greene avenue and 17 feet 6 inches from the east curb line of
Bushwick avenue.  The other (the one in which plaintiff fell) is in
about the center of Greene avenue and 16 feet from the east curb
line of Bushwick avenue.  The defendant company had commenced
laying the asphalt surface on the morning of the day on which the
accident happened, at the Bushwick avenue end of Greene avenue,.
and had fully covered the surface of the latter avenue to a point
east of the manholes at the time the accident occurred, and was en-
gaged in rolling it with a steam roller.  At the time plaintiff was
injured the roller had been run into Bushwick avenue for the pur-
pose of raising steam, and was standing still about 20 or 25 feet
west of the manhole into which plaintiff fell.  It was necessary to-
remove the manhole covers while the asphalt was being rolled, in
order that the roller could come in contact with the asphalt surface
next to the manholes, and to prevent the covers being broken they
had been removed about a half hour before the accident happened.
To give notice to the public that the street was in process of repair,
four wooden horses, each 12 feet long, had been placed, two across
the head of Greene avenue on a line with the east curb line of Bush-

wick avenue, and one across the sidewalk on the east side of said avenue on each side of Greene avenue. Each horse had painted on it in letters 4 or 5 inches long the words "Street Closed."

The plaintiff, at about 11 o'clock in the forenoon of May 29th, was proceeding northerly on the easterly side of Bushwick avenue, and, as she approached Greene avenue, was walking on the dirt between the flag walk and the fence line, about a foot or two from such fence line. As she stepped from the curb down on the asphalt on Greene avenue she heard a loud noise back of her and turned her head to see what it was, and, as she says, "before I walked many steps" she fell into the manhole. Greene avenue is 30 feet wide between curbs. It is apparent, therefore, that from the time she turned her head to ascertain the cause of the noise she walked some 15 feet before she reached the manhole. She had passed one of the horses referred to, which crossed the flag walk entirely and projected 3 feet over the dirt on each side of it. As the distance between the flag walk and the fence line was 6 feet, 3 of which were covered by the horse, the plaintiff, traveling 1 or 2 feet from the fence line, passed within 1 or 2 feet of the end of the horse, upon which she might have seen the notice that Greene avenue was closed. There was nothing to obstruct her view, and, as she testified, the surface of the street was bright, which attracted her attention some time before she reached it. The manhole, she says, "was a great black opening there in the middle of the street," and "if I had looked down I couldn't help seeing that opening. I could see it. If I looked down, I would have seen it." She saw the roller and the men at work, and the conclusion is irresistible that, had she exercised any care or vigilance in observing where she was going, she would have seen the manhole, and the accident would not have happened. The conditions there required her to exercise a greater degree of care than is required of a pedestrian passing over a street in normal condition. She could not recklessly disregard the precautions which the visible conditions required and proceed as if the street was free and unobstructed.

There is no satisfactory evidence in the case showing plaintiff free from contributory negligence, or that she did anything by way of exercising caution or care in attempting to cross Greene avenue. Had she exercised even an ordinary degree of care, it is difficult to conceive how she could have avoided seeing, not only the visible and actual conditions, including the open manhole, but the precautions taken by placing the lettered horses on each side of the avenue. It cannot be said that a pedestrian who fails to observe such surroundings and carelessly walks into an open manhole in broad daylight is free from negligence contributing to the accident. It is no answer to say that she testified that her attention was attracted from the street by some noise. She was standing within a few feet of four signs announcing that the street was closed, one of which she had just passed that prevented access to Greene avenue over the flag walk. She saw the roller, and men at work a little further on. She knew the street was in process of repair, and her assumption that she could safely walk some 15 feet, under such conditions, giving no attention

to or even looking to see where she was going or what danger she-was walking into, was not warranted and cannot be justified. Ordinary prudence required that, if she was going to look elsewhere-than at the obstructed street she was crossing, she should stop while so engaged, and not continue walking while her attention was diverted.. Upon the evidence the plaintiff was not entitled to recover, there be-ing no proof sufficient to meet the burden which the law places upon: her of being herself free from negligence contributing to her injury,. and the defendants' motions, for a nonsuit should have been granted..

For this reason, and without determining whether the evidence is. sufficient to establish negligence on the part of the defendants, the-judgment and order must be reversed, and a new trial granted; costs. to abide the event. All concur.